**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JONATHAN P. LOPEZ, | : | |
| | : | Civil Action No. 10-4023 (RBK) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| OFFICER HARRIS, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff pro se
Jonathan P. Lopez
Ancora Psychiatric Hospital
301 Spring Garden Road
Ancora, NJ 08037

**KUGLER**, District Judge

        Plaintiff Jonathan P. Lopez, a patient at Ancora Psychiatric

Hospital, seeks to bring this action in forma pauperis pursuant

to 42 U.S.C. § 1983, alleging violations of his constitutional

rights.  Based on his affidavit of indigence, the Court will

grant Plaintiff's application to proceed in forma pauperis

pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court

to file the Complaint.

        At this time, the Court must review the Complaint to

determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that Defendant Officer Harris, an employee of the New Jersey Human Services Police Department employed to patrol the grounds at Ancora Psychiatric Hospital, arrested him for violation of a restraining order and making terroristic threats, without probable cause.

He also alleges that Defendant Human Services Police Department is liable to him for failure to train Officer Harris.

Plaintiff seeks compensatory and punitive damages.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

2

in the light most favorable to the plaintiff." <u>Morse v. Lower</u> <u>Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. <u>Deutsch v. United</u> <u>States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson</u> <u>v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

3

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007)
(citations omitted).

Where a complaint can be remedied by an amendment, a
district court may not dismiss the complaint with prejudice, but
must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34
(1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d
Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane
v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal
pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg
County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  West v. Atkins, 487 U.S. 42, 48

4

(1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." <u>Monell</u>, 436 U.S. at 690 n.55. "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

IV.   <u>ANALYSIS</u>

A.   <u>False Arrest Claim</u>

Plaintiff alleges that Officer Harris arrested him without probable cause.

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983. <u>See</u> <u>Walmsley v. Philadelphia</u>, 872 F.2d 546 (3d Cir. 1989)(citing cases); <u>see</u> <u>also</u>, <u>Albright v. Oliver</u>, 510 U.S. 266, 274 (1994) (a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures). Under New Jersey law, false arrest has been defined as "the constraint of the person without legal

justification." <u>Ramirez v. United States</u>, 998 F. Supp. 425, 434
(D.N.J. 1998) (quoting <u>Fleming v. United Postal Service, Inc.</u>,
604 A.2d 657, 680 (N.J. Law Div. 1992)).

To state a Fourth Amendment claim for false arrest, a
plaintiff must allege two elements:  (1) that there was an
arrest; and (2) that the arrest was made without probable cause.
<u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir.
1988).  To establish the absence of probable cause, a plaintiff
must show "that at the time when the defendant put the
proceedings in motion the circumstances were such as not to
warrant an ordinary prudent individual in believing that an
offense had been committed." <u>Lind v. Schmid</u>, 67 N.J. 255, 262
(1975).  "Probable cause . . . requires more than mere suspicion;
however, it does not require that the officer have evidence to
prove guilt beyond a reasonable doubt." <u>Orsatti v. New Jersey
State Police</u>, 71 F.3d 480, 482-83 (3d Cir. 1995).  Rather,
probable cause exists when the facts and circumstances are
"sufficient to warrant a prudent man in believing that the
defendant had committed or was committing an offense." <u>Gerstein
v. Pugh</u>, 420 U.S. 103, 111 (1975) (<u>quoting</u> <u>Beck v. State of Ohio</u>,
379 U.S. 89, 91 (1964)); <u>Sharrar v. Felsing</u>, 128 F.3d 810, 817
(3d Cir. 1997).

Plaintiff's allegations are sufficient to permit the false
arrest claim to proceed as against Officer Harris.

B.   <u>Failure to Train Claim</u>

Plaintiff alleges that the Human Services Polices Department is liable to him for failure to train Officer Harris.  The allegations are not sufficient to state a claim.

Initially, Plaintiff has failed to assert facts sufficient to state a claim, as against any person, for failure to train Officer Harris.

Where a need for "more or different training ... is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train ... can fairly be said to represent official policy," <u>City of Canton v. Harris</u>, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable, <u>Id.</u>

In addition, in resolving the issue of supervisory liability,

> the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program.  ...  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training ... .  Moreover, for liability to attach ... the identified deficiency in a city's training program must be closely related to the ultimate injury.

<u>Id.</u> at 390-91.  Here, Plaintiff has alleged only that one officer arrested him without probable cause, plainly an insufficient basis on which to assert a claim for failure to train.  Plaintiff

has failed to allege any facts describing the allegedly faulty training program, or suggesting that any inadequacies are likely to lead to constitutional violations, or suggesting that any deficiencies are closely related to the ultimate constitutional violation alleged.

In addition, Plaintiff has failed to allege facts suggesting that the Human Services Police Department should be held liable. Most importantly, it appears that the Human Services Police Department is an arm of the state government, which is immune from liability under the Eleventh Amendment. See, e.g., N.J.S.A. 30:40-14 et seq. (appointment of police officers for department of human services).  Title 28 Section 1915(e)(2)(B)(iii) requires this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v.

Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983).

Finally, to the extent the Human Services Police Department could not be considered an arm of the state government immune under the Eighth Amendment, there is no vicarious liability under § 1983 that would permit it to be held liable.  Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City

9

Department of Social Services, 436 U.S. 658, 690-91, 694 (1978)
(municipal liability attaches only "when execution of a
government's policy or custom, whether made by its lawmakers or
by those whose edicts or acts may fairly be said to represent
official policy, inflicts the injury" complained of); Natale v.
Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d
Cir. 2003).  "A defendant in a civil rights action must have
personal involvement in the alleged wrongs, liability cannot be
predicated solely on the operation of respondeat superior.
Personal involvement can be shown through allegations of personal
direction or of actual knowledge and acquiescence."  Rode v.
Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations
omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286,
1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-
91 (3d Cir. 1995).

    To establish municipal liability under § 1983, "a plaintiff
must show that an official who has the power to make policy is
responsible for either the affirmative proclamation of a policy
or acquiescence in a well-settled custom."  Bielevicz v. Dubinon,
915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v.
Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516
U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v.
Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must
demonstrate that, through its deliberate conduct, the

municipality was the moving force behind the plaintiff's injury.
Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing]
> final authority to establish municipal policy with
> respect to the action issues a final proclamation,
> policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212
> (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati,
> 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452
> (1986) (plurality opinion)). A custom is an act "that
> has not been formally approved by an appropriate
> decisionmaker," but that is "so widespread as to have
> the force of law." [Bd. of County Comm'rs of Bryan
> County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]
>
> There are three situations where acts of a
> government employee may be deemed to be the result of a
> policy or custom of the governmental entity for whom
> the employee works, thereby rendering the entity liable
> under § 1983. The first is where "the appropriate
> officer or entity promulgates a generally applicable
> statement of policy and the subsequent act complained
> of is simply an implementation of that policy." The
> second occurs where "no rule has been announced as
> policy but federal law has been violated by an act of
> the policymaker itself." Finally, a policy or custom
> may also exist where "the policymaker has failed to act
> affirmatively at all, [though] the need to take some
> action to control the agents of the government 'is so
> obvious, and the inadequacy of existing practice so
> likely to result in the violation of constitutional
> rights, that the policymaker can reasonably be said to
> have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Here, Plaintiff has alleged no facts that would suggest that
the allegedly false arrest was the product of a policy, or
deliberate indifference to the need for a policy, of the Human
Services Police Department.

For all of these reasons, the "failure to train" claim must
be dismissed with prejudice.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the false arrest claim may proceed as against Defendant Officer Harris.  The remaining claim against the Human Services Police Department will be dismissed with prejudice for failure to state a claim.

An appropriate order follows.


s/Robert B. Kugler
Robert B. Kugler
United States District Judge

Dated: August 18, 2010

12